QUINN EMANUEL URQUHART & SULLIVAN, LLP
Michael E. Williams (Bar No. 181299)
michaelwilliams@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
Mikayla Wasiri (Bar No. 333890)
mikaylawasiri@quinnemanuel.com
Julian T. Schoen (Bar No. 344202)
julianschoen@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

*Attorneys for Defendants*
*Bytedance Ltd., et al.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| Wizards of OBS, LLC., a California Limited Liability Company;<br><br>              Plaintiff,<br><br>      vs.<br><br>BYTEDANCE LTD., a Cayman Islands Company; BYTEDANCE INC., a Delaware Corporation; TIKTOK LTD., a Cayman Islands Company; TIKTOK INC., a California Corporation; TIKTOK PTE. LTD., a Singapore Company; DOES 1-10, inclusive;<br><br>              Defendants. | Case No. 5:25-CV-0636-SSS-DTB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MICHAEL E. WILLIAMS FILED CONCURRENTLY HEREWITH]**<br><br>Date: October 3, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Sunshine Suzanne Sykes |

# NOTICE OF MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2025, at 2:00 p.m., or at another time convenient for the Court, in Courtroom 2 of the United States Courthouse at 3470 Twelfth Street, Riverside, California, or in such manner as the Court directs, Defendants Bytedance Ltd., Bytedance Inc., TikTok Ltd., TikTok Inc., and TikTok Pte. Ltd. (collectively, "Defendants") will move this Court to dismiss the First Amended Complaint ("FAC") filed by Plaintiff Wizards of OBS, LLC ("OBS").

Defendants make this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that OBS: (i) engages in improper group pleading in violation of Fed. R. Civ. P. 8; (ii) fails to plausibly state a claim for breach of contract; (iii) cannot overcome copyright preemption on its breach-of-contract claim; and (iv) cannot recover statutory damages or attorneys' fees as a matter of law. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and all other matters of which the Court may take judicial notice, the Declaration of Michael E. Williams and accompanying exhibits, the pleadings in this case, and any further briefing and argument in support of this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3 on August 6, 2025. The parties did not resolve the issues that would have avoided the need for this Motion.

DATED:  August 15, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Michael E. Williams*

Michael E. Williams
*Attorney for Defendants*
*Bytedance Ltd., et al.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 3

ARGUMENT ........................................................................................................... 5

I.    THE COURT SHOULD DISMISS OBS'S UNDIFFERENTIATED CLAIMS AGAINST MULTIPLE DEFENDANTS FOR FAILURE TO COMPLY WITH RULE 8 ................................................................................ 5

II.   OBS FAILS TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT ...................................................................................................... 7

      A.    OBS Fails To Allege The Existence Of A Binding Contract ................. 7

      B.    OBS Fails To Plausibly Allege Damages Caused By Breach .............. 11

III.  THE COPYRIGHT ACT PREEMPTS OBS'S BREACH-OF-CONTRACT CLAIM ...................................................................................... 12

      A.    OBS's Contract Claim Falls Within The Subject Matter Of Copyright ................................................................................................ 13

      B.    OBS's Contract Claim Asserts Violations Of Rights Equivalent To Those The Copyright Act Covers ..................................................... 13

            1.    OBS's Contract Claim Lacks An "Extra Element" ................... 13

            2.    Violating The GPL's Provisions Gives Rise To Copyright Infringement, Which Means It Cannot Also Give Rise To A Contract Claim ................................................................. 17

IV.   THE COURT SHOULD DISMISS OBS'S DEMAND FOR STATUTORY RELIEF UNDER THE COPYRIGHT ACT .......................... 19

CONCLUSION ...................................................................................................... 21

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4

5

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ............................................................... 11

6

7

*Artifex Software, Inc. v. Hancom, Inc.*,
   2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ....................................... 16

8

9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 7

10

11

*B.K. v. Eisenhower Med. Ctr.*,
   721 F. Supp. 3d 1056 (C.D. Cal. 2024) ................................................. 11

12

13

*Be In, Inc. v. Google Inc.*,
   2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ......................................... 10

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 7

15

16

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ............................................................. 8, 10

17

18

*Best Carpet Values, Inc. v. Google, LLC*,
   90 F.4th 962 (9th Cir. 2024) ........................................................... 13, 14

19

20

*Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co.*,
   2022 WL 3574423 (C.D. Cal. July 22, 2022) ....................................... 19

21

22

*Bramalea Cal., Inc. v. Reliable Interiors, Inc.*,
   119 Cal. App. 4th 468 (2004) ................................................................ 11

23

24

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990) ................................................................. 7

25

*Chabolla v. ClassPass Inc.*,
   129 F.4th 1147 (9th Cir. 2025) ..................................................... 7, 8, 10

26

27

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
   450 U.S. 311 (1981) ............................................................................... 12

28

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012) ................................................................ 20

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) .............................................................................. 21

*Corazon v. Aurora Loan Servs., LLC*,
   2011 WL 1740099 (N.D. Cal. May 5, 2011) ........................................................ 6

*Daniels v. Kaiser Foundation Hospitals*,
   2024 WL 5692219 (C.D. Cal. Apr. 19, 2024) ...................................................... 6

*Davis v. General Atomics*,
   2025 WL 1127872 (C.D. Cal. Jan. 23, 2025) ...................................................... 6

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................................... 9

*Derek Andrew, Inc. v. Poof Apparel*,
   528 F.3d 696 (9th Cir. 2008) .............................................................................. 20

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021) ............................................................................ 21

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................ 11

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021) ................................................................................................ 13

*Grumpy Cat Ltd. v. Grenade Beverage LLC*,
   2018 WL 2448126 (C.D. Cal. May 31, 2018) ............................................... 18, 19

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) ................................................................. 8

*Imageline, Inc. v. CafePress.com, Inc.*,
   No. CV 10-9794 PSG, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) .................. 7

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ................................................... 15, 17, 18, 19

*Jacobsen v. Katzer*,
   609 F. Supp. 2d 925 (N.D. Cal. 2009) ................................. 11, 12, 14, 15, 16, 17

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) ................................................................ 9

*Laws v. Sony Music Entertainment, Inc.,*
  448 F.3d 1134 (9th Cir. 2006) ......................................................... 12, 13

*Maloney v. T3Media, Inc.,*
  853 F.3d 1004 (9th Cir. 2017) .............................................................. 13

*Masterson Mktg., Inc. v. KSL Recreation Corp.,*
  2006 WL 8455398 (S.D. Cal. Mar. 29, 2006) .................................. 13, 16

*McHenry v. Renne,*
  84 F.3d 1172 (9th Cir. 1996) ................................................................. 5

*MDY Indus., LLC v. Blizzard Ent., Inc.,*
  629 F.3d 928 (9th Cir. 2010) ........................................................... 17, 18

*Moreno v. UtiliQuest, LLC,*
  29 F.4th 567 (9th Cir. 2022) .................................................................. 3

*Nguyen v. Barnes & Noble Inc.,*
  763 F.3d 1171 (9th Cir. 2014) .......................................................... 8, 10

*Oberstein v. Live Nation Ent., Inc.,*
  60 F.4th 505 (9th Cir. 2023) .................................................................. 7

*Por Los Rios, Inc. v. Lions Gate Ent., Inc.,*
  2014 WL 12605374 (C.D. Cal. May 21, 2014) .................................... 19

*Riot Games, Inc. v. Suga PTE, Ltd.,*
  638 F. Supp. 3d 1102 (C.D. Cal. 2022) ................................................. 6

*S&P Financial Advisors v. Kreyaa LLC,*
  2016 WL 11020958 (N.D. Cal. Oct. 25, 2016) ................................... 12

*Satvati v. Allstate Northbrook Indem. Co.,*
  634 F. Supp. 3d 792 (C.D. Cal. 2022) ................................................. 11

*Selby v. New Line Cinema Corp.,*
  96 F. Supp. 2d 1053 (C.D. Cal. 2000) ................................................. 16

*Shake Shack Enters., LLC v. Brand Design Co., Inc.,*
  708 F. Supp. 3d 515 (S.D.N.Y. 2023) ................................................. 16

*Solis v. City of Fresno*,
    2012 WL 868681 (E.D. Cal. Mar. 13, 2012)......................................................6

*Sollberger v. Wachovia Sec.*,
    LLC, 2010 WL 2674456 (C.D. Cal. June 30, 2010) ...........................................6

*Specht v. Netscape Commc'ns Corp.*,
    150 F. Supp. 2d 585 (S.D.N.Y. 2001),
    aff'd, 306 F.3d 17 (2d Cir. 2002) .................................................................8, 11

*Steward v. West*,
    2013 WL 12120232 (C.D. Cal. Sept. 6, 2013) ..................................................5

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...........................................................................3

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019) .............................................................................15

*Vernor v. Autodesk, Inc.*,
    621 F.3d 1102 (9th Cir. 2010) ........................................................................15

*Versata Software, Inc. v. Ameriprise Fin., Inc.*,
    2014 WL 950065 (W.D. Tex. Mar. 11, 2014)...................................................16

*Vogt-Nem, Inc. v. M/V Tramper*,
    263 F. Supp. 2d 1226 (N.D. Cal. 2002)...........................................................18

## Statutes

17 U.S.C. § 101.....................................................................................................13

17 U.S.C. § 102.....................................................................................................13

17 U.S.C. § 103.....................................................................................................13

17 U.S.C. § 106....................................................................................13, 14, 15, 17, 19

17 U.S.C. § 117.....................................................................................................13

17 U.S.C. § 301...........................................................................................*12, 17*

17 U.S.C. § 412.....................................................................................................20

17 U.S.C. § 504(c)(1) .......................................................................................20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>Rules</u>**

Fed. R. Civ. P. 8 .................................................................................... 1, 5, 6

Fed. R. Civ. P. 12 ..................................................................................... 3, 7

## **<u>Other Authorities</u>**

https://www.gnu.org/licenses/old-licenses/gpl-2.0.en.html ...................................... 3

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## **PRELIMINARY STATEMENT**

The new allegations plaintiff Wizards of OBS, LLC ("OBS") asserts in its First Amended Complaint (Dkt. 19, "FAC") amount to mere window-dressing and fail to address the fatal flaws underlying its claims. The Court should dismiss the FAC with prejudice for the reasons discussed herein.

*First*, OBS still fails to satisfy Federal Rule of Civil Procedure 8 because it impermissibly lumps all five Defendants together without alleging which entity took which action. It defines all five separate entities as "Defendants" and asserts identical, undifferentiated allegations against them. OBS's "new" allegations that, "on information and belief" each Defendant employed workers who engaged in the coding of the alleged Infringing Software, does not cure this deficiency. OBS alleges no plausible facts to support its assertions. Courts consistently reject such improper group pleading, holding that a plaintiff must provide fair notice of the conduct attributed to each defendant. OBS still has made no real attempt to do so here—now proving conclusively that it *cannot* do so—and so its FAC fails in its entirety for this threshold reason.

*Second*, OBS still has failed to state a claim for breach of contract because it does not plead the required elements of contract formation or damages. In the initial Complaint, OBS alleged no facts plausibly showing that any Defendant had knowledge of the terms of GNU General Public License, version 2 ("GPL"), or affirmatively agreed to them, both of which are required to allege "mutual assent" to form a contract. In the FAC, OBS attempts to cure this problem by alleging that Defendants had notice of and assented to the GPL's terms because OBS made the Software publicly available on the "GitHub" website and included reference to the GPL on GitHub. But the GitHub webpage, which is incorporated by reference in the FAC, confirms that the GPL is not conspicuously displayed, there is no requirement to accept the terms of the license before downloading the Software, and there is no indication Defendants agreed to its terms. OBS's theory of contract formation thus

would amount to an unenforceable "browsewrap" agreement under Ninth Circuit authority. OBS also fails to plead that Defendants caused it any cognizable damages by their alleged breach, instead offering only vague assertions of harm which are unsupported by any plausible facts.

*Third*, even if OBS could allege facts to support a contract claim, the Copyright Act preempts OBS's attempt to rebrand its allegations of unauthorized copying and distribution as a breach of contract. OBS fails to identify an "extra element" in its breach-of-contract claim that qualitatively distinguishes it from a copyright-infringement claim to avoid preemption. OBS merely adds the conclusory allegation in the FAC that the GPL provides rights that are "specific" to the GPL and implicate "no part of or elements of the Copyright Act." But that conclusory allegation lacks factual support and falls short of demonstrating a right substantively different from the exclusive copyright rights of reproduction, distribution, and the creation of derivative works.

*Finally*, OBS's own allegations continue to foreclose its request for statutory damages and attorneys' fees under the Copyright Act. A copyright holder can seek statutory damages and attorneys' fees for a single work only if it registered the copyrighted work within three months of initial publication of the work or before the alleged infringement. The FAC, like the initial complaint, leaves no doubt that the Software was not registered in a timely manner, which forecloses these remedies. OBS's new allegations about additional infringements that allegedly occurred in May 2023 changes nothing. Statutory damages are based on the number of "works" infringed, not how many "infringements" occurred. Here, OBS concedes the Software is a single work that was registered long after these events, thus precluding it from recovering statutory damages and attorneys' fees, regardless of any purported subsequent infringements. The Court should therefore dismiss OBS's requests for such relief.

# **FACTUAL BACKGROUND**[1]

OBS alleges it is a California-based software development studio that creates software for video recording, livestreaming, capture, and editing.  (Dkt. 19 ("FAC") at ¶¶ 4, 11.)  OBS further alleges that on August 30, 2013, it published a livestreaming software called OBS Studio Software (the "Software").  (*Id.* at ¶ 12.)  OBS made the Software freely and publicly available for download pursuant to the terms of the GPL.  (*Id.* at ¶¶ 15-17.)

The GPL is an open-source copyright license that provides licensees "legal permission to copy, distribute and/or modify the software" subject to specific terms and conditions.  (*See* FAC ¶ 17; *see also* Declaration of Michael E. Williams filed concurrently with Defendants' Request for Judicial Notice ("Williams Decl."), Ex. 1 at Preamble.)[2]  The GPL permits licensees to "copy and distribute" GPL-covered software, "provided that" they "accompany it with the complete corresponding machine-readable source code," or a written offer to provide the same.  (Williams Decl., Ex. 1 at ¶ 3.)  The GPL also requires licensees to include a notice that the software is licensed under the GPL.  (*Id.* at ¶ 1.)

---

[1]  Defendants accept the allegations in the FAC as true solely for purposes of this Motion and reserve their rights to contest them in the future.  *See Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022).

[2]  On a Rule 12(b)(6) motion, the Court may "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Here, the Court may consider the GPL's terms because OBS refers to and relies on the GPL throughout the complaint and cannot reasonably dispute its authenticity.  *See Swartz*, 476 F.3d at 763 (holding district court properly considered on 12(b)(6) motion engagement letter referred to in breach of contract complaint).  The GPL is available here:  https://www.gnu.org/licenses/old-licenses/gpl-2.0.en.html and attached as Exhibit 1 to the Williams Declaration in support of Defendants' Request for Judicial Notice filed concurrently herewith.

OBS alleges that Defendants comprise a multinational technology company that develops software for mobile applications and desktop computers. (FAC at ¶¶ 5-9, 18-27.) OBS alleges that one such software application is TikTok, which OBS describes as "a social media application that allows for the creation, sharing, and editing of audiovisual content." (*Id*. at ¶ 18.) OBS alleges that on December 15, 2021, it discovered that TikTok Live Studio utilized "copies of the Software code base directly in the Infringing Software." (*Id*. at ¶ 35.) OBS further alleges that on December 16, 2021, it notified Defendants that TikTok Live Studio contained the Software's copyrighted code. (*Id*. at ¶ 36.)

On May 2, 2023, Jim "Hugh" Bailey registered the Software with the United States Copyright Office, Registration No. TX0009312907. (*See* FAC ¶ 13.) After Defendants challenged OBS's standing to assert copyright infringement claims when it does not own the copyright at issue, OBS amended its complaint to allege that Mr. Bailey "assigned all right, title, and interest in the valid copyright in the Software to Plaintiff through written instrument, effective December 9, 2024." (FAC ¶ 14.)[3]

On March 10, 2025, OBS filed its complaint against Defendants, asserting claims for copyright infringement and breach of contract. (Dkt. 1.) On July 18, 2025, Defendants filed their motion to dismiss OBS's Complaint. (Dkt. 17.) In response to Defendants' initial motion, on August 1, 2025, OBS filed its FAC. The FAC continues to assert the same allegations as the initial complaint while adding a handful of cursory, cosmetic, and conclusory allegations that fail to salvage OBS's claims from dismissal. OBS continues to allege that Defendants committed copyright

---

[3] OBS did not include the assignment with its FAC and it was never recorded with the Copyright Office. Defendants accept OBS's allegations about the assignment as true for purposes of this Motion only and expressly reserve their right to challenge OBS's statutory standing to assert a copyright-infringement claim based on its purported rights in the Software once Defendants can conduct discovery on the assignment if this case proceeds past the Motion to Dismiss.

infringement and breached the GPL by failing to comply with its terms and conditions; specifically, the notice provision and the source-code provision, which require distribution of the source code upon request.  (FAC at ¶¶ 38-41.)

## ARGUMENT

## I.    THE COURT SHOULD DISMISS OBS'S UNDIFFERENTIATED CLAIMS AGAINST MULTIPLE DEFENDANTS FOR FAILURE TO COMPLY WITH RULE 8

A plaintiff must provide a "short and plain statement" showing it is entitled to relief and, critically, must give each defendant fair notice of the claims and the grounds upon which they rest.  Fed. R. Civ. P. 8(a)(2); *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal where plaintiffs failed to state "clearly how each and every defendant [is] alleged to have violated plaintiffs' legal rights.") OBS fails to allege any plausible facts demonstrating how each Defendant violated its rights.  OBS sued five distinct corporate Defendants, including three foreign entities, but asserts every allegation against them as if they were a single entity, referring to them collectively as "Defendants."  The FAC only adds for each Defendant the identical conclusory assertion that "on information and belief" unidentified "software developers employed by or working on behalf of" each entity were "engaged in the coding" of TikTok Live Studio.  (FAC ¶¶ 28-33.)  These new allegations still provide ***no facts*** as to what any Defendant allegedly did, or when, or how any conduct by a specific Defendant infringed the copyright or violated the GPL. OBS's failure to allege such facts subjects its FAC to dismissal.  *Steward v. West*, 2013 WL 12120232, at *3 (C.D. Cal. Sept. 6, 2013) (granting motion to dismiss and requiring plaintiff to identify which works were infringed and to what extent each named defendant allegedly infringed the works).

"By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's FAC violates Rule 8(a)(2) because it fails to provide [each Defendant] with fair notice of its alleged

-5-

misconduct." *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (granting motion to dismiss because a party "should not be required to guess which allegations pertain to it"). Further, "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012).

Courts in this District have applied this rule to dismiss similarly defective complaints. In *Davis v. General Atomics*, the court dismissed a complaint that failed to differentiate "what claims apply to which Defendants," noting that such group pleading "fails to satisfy the notice requirement of Rule 8(a)(2)." 2025 WL 1127872, at *8 (C.D. Cal. Jan. 23, 2025). Similarly, in *Daniels v. Kaiser Foundation Hospitals*, the court dismissed claims that "lump[ed] all Defendants together" without identifying which entity did what. 2024 WL 5692219, at *5 (C.D. Cal. Apr. 19, 2024); *see also, e.g.*, *Sollberger v. Wachovia Sec.*, LLC, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing complaint for failure to differentiate between defendants and explaining that "[o]ne common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong").

OBS cannot salvage its deficient pleading by including generic allegations about corporate affiliations or agency. For example, OBS alleges "on information and belief" that ByteDance Ltd. "controls the majority of the shares or other ownership interest(s) in ByteDance Inc., TikTok Ltd., TikTok Inc., and TikTok Pte. Ltd." (FAC ¶ 23.) Such allegations are insufficient to overcome the Defendants' corporate separateness. *See, e.g.*, *Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d. 1102, 1120 (C.D. Cal. 2022) ("It is a fundamental principle of corporate law that a parent and its subsidiary are separate legal entities. This principle of corporate

separateness generally insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary.")

Similarly, OBS alleges that "on information and belief" "all [Defendants] use the TikTok logo as agents for ByteDance Ltd." (FAC ¶ 27.) But that allegation is insufficient to support an agency theory. *See, e.g.*, *Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10-9794 PSG MANX, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) (general allegations of agency are "nothing more than legal conclusions of the type prohibited by *Iqbal* and *Twombly*.") (internal citation omitted). Accordingly, the Court should dismiss OBS's FAC for failure to meet Rule 8's pleading standards.

## II.    OBS FAILS TO STATE A PLAUSIBLE CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract under California law, OBS must plead four elements: "(1) the [existence of the] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). To survive a Rule 12 challenge, OBS is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). OBS's breach-of-contract claim fails on at least the first and last elements.

### A.    OBS Fails To Allege The Existence Of A Binding Contract

OBS's breach-of-contract claim does not allege mutual assent. "'To form a contract under California . . . law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023)). A party must present contract terms in a reasonably conspicuous manner, ***and*** the user must take action that unambiguously manifests

their assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). These principles "apply with equal force to contracts formed online." *Berman*, 30 F.4th at 855-56; *see also Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 596 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002) ("[T]he case law on software licensing has not eroded the importance of assent in contract formation."); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021) ("[T]he mere existence of a privacy policy is not dispositive because users might lack actual or constructive notice of the policy.").

"A website must explicitly notify a user of the legal significance of her actions and a manifestation of assent must be unambiguous." *Chabolla*, 129 F.4th at 1158. To that end, the Ninth Circuit draws a clear line between enforceable and unenforceable online agreements. Clickwrap agreements are enforceable because they require users to affirmatively indicate their assent, typically by clicking a checkbox or scrolling through terms. *See Berman*, 30 F.4th at 856 ("[C]ourts have routinely found clickwrap agreements enforceable"). Browsewrap agreements, by contrast, simply post terms on a website and purport to bind users through passive use. They do not require the user to read anything, click anything, or acknowledge anything. Courts routinely refuse to enforce them. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) ("Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly ... [a] party instead gives his assent simply by using the website."). To form an enforceable online contract in this Circuit, a party must present contract terms in a reasonably conspicuous manner, ***and*** the user must take action that unambiguously manifests their assent. *See Berman*, 30 F.4th at 856.

OBS's new allegation in the FAC that the GPL is "prominently and conspicuously displayed" on the GitHub website, where the Software can be downloaded (FAC ¶ 58), is belied by the actual webpage, which is incorporated by reference in the FAC. (FAC ¶ 15; Williams Decl., Ex. 2); *see Knievel v. ESPN*, 393

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference'
doctrine applies with equal force to internet pages as it does to printed material.");
*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160-61 (9th Cir. 2012) (web
pages referenced in the complaint are incorporated by reference). Indeed, the GitHub
webpage confirms the unenforceable nature of OBS's purported contract. The terms
of the GPL are not prominently and conspicuously displayed; rather, there is a link to
"GPL-2.0 license" in small print, off to the side of the source code repositories, and
buried among a list of other links, as shown below:



(Williams Decl., Ex. 2.)

Further, the link to the GPL does not require the user to take any affirmative
action to accept the GPL's terms before downloading the Software, which is required
for online contract formation in the Ninth Circuit. *See Chabolla*, 129 F.4th at 1158
("A website must explicitly notify a user of the legal significance of her actions and a

manifestation of assent must be unambiguous.").  The GitHub webpage OBS relies upon demonstrates that, at best, it constitutes a "browsewrap" agreement, which is unenforceable as a contract.  *See id.* (where landing page "fails to provide reasonably conspicuous notice . . . any action the user takes on the page cannot unambiguously manifest her assent to those terms); *Nguyen*, 763 F.3d at 1178-79 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.")[4]

Nor can OBS rely on language in the GPL that states "by modifying or distributing the Program . . . you indicate your acceptance to this License." (Williams Decl., Ex. 1 at ¶ 5).  Courts reject attempts to manufacture assent without an affirmative act of acceptance. *See, e.g.*, *Chabolla*, 129 F.4th at 1158 (intent "requires notice of contract terms as well as unambiguous manifestation of assent to those terms.") (internal quotations omitted); *Berman*, 30 F.4th at 858 (finding that the "textual notice was not conspicuous and did not explicitly inform [defendants] that by clicking on the 'continue' button they would be bound by the terms and conditions."); *Be In, Inc. v. Google Inc.*, 2013 WL 5568706, at *8 (N.D. Cal. Oct. 9, 2013) (granting motion to dismiss for lack of mutual assent where contract stated that "by using and/or visiting this Website … you signify your agreement to these Terms of Use … If you do not agree to any of these Terms of Use, or the CamUp Privacy Policy, you must discontinue use"); *Specht*, 150 F. Supp. 2d at 596 ("Before downloading the software, the user need not view any license agreement terms or even any reference to a license

---

[4]  As a fallback, OBS alleges that Defendants had "actual notice" or "constructive knowledge" of the GPL (FAC ¶ 58), but offers no facts in support, thus failing to state a valid claim.

agreement, and need not do anything to manifest assent to such a license agreement other than actually taking possession of the product.").

Because OBS fails to allege ***any*** facts plausibly suggesting that any Defendant unambiguously assented to the terms of the GPL, it fails to state a breach-of-contract claim.

### B.    OBS Fails To Plausibly Allege Damages Caused By Breach

OBS's contract claim fails for the additional reason that it does not allege cognizable harm. *Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) ("A breach of contract is not actionable without damage."). OBS must allege facts establishing "appreciable and actual damage," not nominal or speculative injury. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)). Conclusory references to harm or the mere assertion that a defendant "benefited" are insufficient. *See, e.g.*, *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 799 (C.D. Cal. 2022) ("[T]o survive a 12(b)(6) or 12(c) motion, plaintiffs must plead sufficient factual information to enable the court to decipher what consequential damages occurred as a result of the purported breach."); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1141 (N.D. Cal. 2014) (dismissing contract claim because plaintiff did not and "cannot allege that [defendant's] alleged breach of the contract caused her to suffer any contract damages").

This case is similar to *Jacobsen v. Katzer* ("*Jacobsen II*"), where the plaintiff asserted a breach-of-contract claim based on violation of an open-source software license similar to the GPL. 609 F. Supp. 2d 925, 932-33 (N.D. Cal. 2009). The court dismissed the contract claim, in part for lack of damages, holding that vague references to "harm" and "disgorgement" were legally insufficient because the plaintiff provided "no indication what, if any, damages [plaintiff] claims to have incurred that were the proximate cause of a breach of the Artistic License." *Id.* at 932-33. Similarly, in *S&P Financial Advisors v. Kreeyaa LLC*, the court denied leave

to amend where the proposed complaint failed to allege "a specific harm that was proximately caused by any alleged breach." 2016 WL 11020958, at *3 (N.D. Cal. Oct. 25, 2016).

OBS's FAC suffers from the same defect as the complaints in *Jacobsen II* and *S&P Financial Advisors*. OBS makes vague references to loss of market recognition, donations, and developer goodwill (FAC ¶ 62), but asserts no facts to support these conclusory allegations of harm purportedly caused by Defendants' alleged misconduct. Nor could it. The Software is, and always has been, available for anyone in the world to download and use at no cost. OBS cannot plausibly allege any cognizable damages flowing from the alleged breach, and its contract claim fails for this reason, too.

## III. THE COPYRIGHT ACT PREEMPTS OBS'S BREACH-OF-CONTRACT CLAIM

Even if OBS could allege plausible facts sufficient to state a claim for breach of contract, the Court should nonetheless dismiss that claim because the Copyright Act preempts it.

Section 301 of the Copyright Act expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright[.]" 17 U.S.C. § 301(a); *see Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) ("The underlying rationale of the pre-emption doctrine, as stated more than a century and a half ago, is that the Supremacy Clause invalidates state laws that interfere with or are contrary to, the laws of congress[.]") (citation modified). These exclusive rights under the Copyright Act include the right "to do and to authorize others to display, perform, reproduce or distribute copies of the work, and to prepare derivative works." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

State-law claims are preempted when: (1) "the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102

and 103;" and (2) "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); *Laws*, 448 F.3d at 1137-38. Both prongs are met here.

## A. OBS's Contract Claim Falls Within The Subject Matter Of Copyright

Computer programs—including associated software and source codes—are original works of authorship that fall within the subject matter of the Copyright Act. *See* 17 U.S.C. §§ 101, 117 (defining and providing copyright protection to "computer program"); *535 F LLC v. Oracle Am., Inc.*, 593 U.S. 1, 23(2021) ("By defining computer programs in [17 U.S.C.] § 101, Congress chose to place this subject matter within the copyright regime"). OBS admits as much. (FAC ¶ 43.) Accordingly, the first prong of the preemption test is met.

## B. OBS's Contract Claim Asserts Violations Of Rights Equivalent To Those The Copyright Act Covers

### 1. OBS's Contract Claim Lacks An "Extra Element"

"To satisfy the 'equivalent rights' part of the preemption test, the alleged misappropriation must be equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act." *Laws*, 448 F.3d at 1143 (citation modified). "In order not to be equivalent, the right under state law must have an 'extra element' that 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 2006 WL 8455398, at *3 (S.D. Cal. Mar. 29, 2006); *Laws*, 448 F.3d at 1143. The state law claim need "not be identical to the elements in a copyright action" to be preempted; dismissal is appropriate when the "underlying nature of [plaintiff's] state law claim[] is part and parcel of a copyright claim." *Laws*, 448 F.3d at 1144; *see Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 972 (9th Cir. 2024) (focus is not

on "the nature of the *complained of action*" but rather "the nature of the *right at issue*")
(emphasis in original).

OBS alleges, in conclusory and unexplained fashion, that its contract claim
asserts breaches of "obligations [that] are specific to the GNU General Public License
and distinct from the Copyright Act." (FAC ¶¶ 17, 61.) But the FAC does nothing to
demonstrate an extra element to OBS's contract claim which changes the nature of
that claim into one qualitatively different from a copyright-infringement claim. In
fact, the allegations remain virtually identical for both claims. OBS alleges in its
copyright-infringement claim that Defendants "copied, reproduced, displayed,
modified, made derivatives of and distributed the Software . . ." (FAC ¶ 45.)
Similarly, it alleges in its breach-of-contract claim that it granted the Defendants "a
license to *copy, modify and distribute* the Software under the GNU GPL" which they
"substantially and materially breached[.]" (FAC ¶ 60 (emphasis added).)
"Displaying and reproducing a copy of a copyrighted work . . . falls squarely within
the scope of 17 U.S.C. § 106." *Best Carpet Values, Inc.*, 90 F.4th at 973. These
allegations confirm that OBS's breach-of-contract claim asserts rights that are
equivalent to those rights the Copyright Act protects.

Moreover, the GPL is a copyright license, the terms of which explicitly cover
only the "copying, distribution, and modification" of the copyrighted work.
(Williams Decl., Ex. 1 at ¶ 0.) Each of these covered activities is within the exclusive
rights the Copyright Act grants to a copyright holder. 17 U.S.C. § 106; *Best Carpet
Values, Inc.*, 90 F.4th at 970. Because the GPL only covers rights exclusive to
copyright law, any breach of the GPL necessarily results in a claim arising under the
Copyright Act, not contract law. As such, OBS's breach-of-contract claim based on
alleged violations of the GPL merely describes "violations of the exact same exclusive
federal rights protected by Section 106 of the Copyright Act, the exclusive right to
*reproduce, distribute and make derivative copies*." *Jacobsen II*, 609 F. Supp. 2d at

933 (granting motion to dismiss breach-of-contract claim as preempted) (emphasis added).

None of OBS's other allegations establish an "extra element" that makes its contract claim qualitatively different from its copyright claim.  For "[c]opyright holders who engage in open source licensing," the exclusive right of distribution includes the "right to control the modification and distribution of copyrighted material."  *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("*Jacobsen I*"); *see Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1111 (9th Cir. 2010) (copyright holders may "significantly restrict[] the user's ability to transfer the software").  Under the GPL, a copyright holder controls the distributions of their software by restricting its distribution unless it is accompanied by the source code or an offer to provide the same.  (Williams Decl., Ex. 1 at ¶ 3.)  OBS's contract claim alleges that Defendants violated the GPL by "failing to provide or offer a copy of the full source code of the Infringing Software upon request."  (FAC ¶ 60.)  But this alleged violation is part and parcel of the copyright holder's exclusive right to control the distribution, modification, and display of the copyrighted works.  *See* 17 U.S.C. § 106(3, 5); *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019) (finding that right to modify source code is not an "extra element," and holding that the "vindication of an exclusive right under the Copyright Act, read into a license by negative implication, is preempted by the Copyright Act"); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1060 (C.D. Cal. 2000) (promise not to infringe copyright "is so inextricably entwined with the copyright that to permit the promisee to sue upon it [for breach of contract] would undermine the preemption feature of the Copyright Act").

OBS also alleges that Defendants violated the GPL by "failing to provide certain notices and disclaimers in the Infringing Software." (FAC ¶ 60; *see* Williams Decl., Ex. 1 at ¶ 1.)  But this allegation does not contain an extra element that qualitatively transforms its copyright-infringement claim either.  Indeed, the *Jacobsen*

*II* court found that a similar open-source license term relating to notice requirements "d[id] not add an 'extra element' which changes the nature of the [breach of contract] action or the rights secured under federal copyright protection." 609 F. Supp. 2d at 933-34; *see also Masterson Mktg., Inc.*, 2006 WL 8455398, at *3 (dismissing breach-of-contract claim because complaint "does not suggest any extra element that would take the breach of contract claims outside the Copyright Act"); *Shake Shack Enters., LLC v. Brand Design Co., Inc.*, 708 F. Supp. 3d 515, 530-31 (S.D.N.Y. 2023) ("[E]ven assuming a contract exists between the parties … the qualitative differences between a contract claim and a copyright infringement claim are, at best, minor where a defendant has merely breached a promise not to distribute copyrighted material.").

Although the Magistrate Judge in *Artifex Software, Inc. v. Hancom, Inc.*, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) concluded that the Copyright Act did not preempt the plaintiff's breach-of-contract claim based on violation of a different version of the GPL, that was because the defendant there offered no explanation as to "why the GPU GPL's open source requirement is not the required extra element," and thus failed to carry "its burden of proving preemption." *Id.* at *3; *see also Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 WL 950065, at *5 (W.D. Tex. Mar. 11, 2014) (concluding that the GPL's source-code requirement constituted "extra element" because the plaintiff alleged "an affirmative promise to make its derivative work open source," but providing no reasoning as to how that GPL provision states any right beyond those the Copyright Act covers).

Unlike the defendants in *Artifex* and *Versata*, Defendants demonstrate here why the GPL's provisions are equivalent to the exclusive rights of copyright holders to control the distribution, reproduction, and modification of their works, and thus fail to provide an extra element qualitatively changing the nature of the claim. (*See* Williams Decl., Ex. 1 at ¶ 0 ("Activities other than copying, distribution and modification are not covered by this License; they are outside its scope.")); *Jacobsen II*, 609 F. Supp. 2d at 933 (finding preemption when "breach of contract claim alleges

violations of the exact same exclusive federal rights protected by Section 106 of the Copyright Act, the exclusive right to reproduce, distribute and make derivative copies"). Accordingly, the Court should dismiss OBS's contract claim as preempted.

> ### 2. Violating The GPL's Provisions Gives Rise To Copyright Infringement, Which Means It Cannot Also Give Rise To A Contract Claim

That OBS's breach-of-contract claim is equivalent to rights protected by the Copyright Act is confirmed by the fact that the requirements of the GPL are license *conditions*, the violation of which gives rise to a claim for copyright infringement, not breach of contract. The fundamental premise behind preemption is that a state-law claim cannot proceed if it is based on equivalent rights giving rise to copyright infringement. 17 U.S.C. § 301 (preempting all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright). Therefore, if violation of the GPL gives rise to a copyright-infringement claim, then preemption prohibits that same violation from giving rise to a breach-of-contract claim. Here, the GPL's provisions, which OBS contends Defendants violated, are *conditions* of the license, the violation of which gives rise to copyright-infringement claim.[5]

"Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract." *Jacobsen I*, 535 F.3d at 1380 (interpreting Ninth Circuit and California law). "However, if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010). Terms that limit a license's

---

[5] Defendants deny that they engaged in copyright infringement, as discovery would show, if this case proceeds that far, that OBS granted Defendants a license to use the Software "as is".

scope are "'conditions,' the breach of which constitute copyright infringement." *Id.* Courts "refer to all other license terms as 'covenants,' the breach of which is actionable only under contract law." *Id.* Consequently, if a licensee violates a condition of the license, it gives rise to a claim for copyright infringement. If a licensee violates a covenant of the license, it gives rise to a claim for breach of contract. *Id.*

To determine whether a contract term is a condition or covenant, courts look to state contract law. *MDY Indus., LLC*, 629 F.3d at 939. "Under California law, 'a covenant is a promise to do or refrain from doing a specific act. A condition is a qualification to the parties' obligations; if it occurs, the interest is terminated or enlarged.'" *Grumpy Cat Ltd. v. Grenade Beverage LLC*, 2018 WL 2448126, at *5 (C.D. Cal. May 31, 2018). Courts also consider the specific phrasing the license uses. For example, under California law, the phrase "provided that" "typically denotes a condition." *Jacobsen I*, 535 F.3d at 1381; *see, e.g.*, *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D. Cal. 2002) (terms associated with conditions precedent include "'if,' 'on condition that' or 'provided'").

The source code and notice provisions of the GPL, which OBS alleges Defendants violated, permit the copying and distribution of the work "provided that" these requirements are met, which indicates a condition under California law. (*See* Williams Decl., Ex. 1 at ¶ 1 ("You may copy and distribute verbatim copies of the Program's source code as you receive it, in any medium, ***provided that*** you conspicuously and appropriately publish on each copy an appropriate copyright notice and disclaimer of warranty.") (emphasis added); *id*. at ¶ 3 (a party may copy and distribute program "***provided that***" it includes "the complete corresponding machine-readable source code" or a written offer to provide such code) (emphasis added).)

Additionally, when an open-source license "states on its face that [it] creates conditions," the claim arises under copyright law. *Jacobsen I*, 535 F.3d at 1381. Like the license in *Jacobsen I*, the GPL states on its face that its provisions constitute

conditions.   The lead header of the GPL is "TERMS AND **CONDITIONS** FOR **COPYING, DISTRIBUTION AND MODIFICATION**."  (*See* Williams Decl., Ex. 1 at Main Heading) (emphasis added).   Each of these referenced conditions are exclusive rights under the Copyright Act—the right to distribute, copy, and modify (i.e., create derivative works).  17 U.S.C. § 106 (1-3).

Thus, a failure to adhere to the GPL's source code and notice conditions gives rise to a claim for copyright infringement because it amounts to the unauthorized copying, distribution, and modification of code covered by the GPL's terms—which are exclusive rights under the Copyright Act.  *See Grumpy Cat*, 2018 WL 2448126, at *7 (finding license term regarding covered products to be a condition rather than a covenant, thus giving rise to a copyright infringement claim).  Because these alleged violations of the GPL give rise to claims for copyright infringement, the rights OBS asserts in its breach-of-contract claim based on these violations are equivalent, and the preemption doctrine prohibits these same violations from giving rise to a breach-of-contract claim.

## IV.    <u>THE COURT SHOULD DISMISS OBS'S DEMAND FOR STATUTORY RELIEF UNDER THE COPYRIGHT ACT</u>

Finally, if the Court does not dismiss the FAC entirely, it should at least dismiss OBS's prayer for statutory damages and attorneys' fees under the Copyright Act (FAC ¶ 56), because OBS is not entitled to those remedies.  Courts within the Ninth Circuit have held that challenging a plaintiff's entitlement to certain categories of damages as a matter of law is properly raised on a 12(b)(6) motion, as opposed to a motion to strike.  *Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co.*, 2022 WL 3574423, at *3 (C.D. Cal. July 22, 2022) (granting motion to dismiss punitive damages claim); *Por Los Rios, Inc. v. Lions Gate Ent., Inc.*, 2014 WL 12605374, at *6 (C.D. Cal. May 21, 2014) (granting motion to dismiss the plaintiff's request for statutory damages).

"Section 412(2) mandates that, in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work." *Derek Andrew, Inc. v. Poof Apparel*, 528 F.3d 696, 699 (9th Cir. 2008); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1101 (S.D. Cal. 2012) (denying request for statutory damages due to untimely registration).

The Court should dismiss OBS's request for statutory damages and attorneys' fees (FAC ¶ 56) because OBS concedes the Software was not registered within three months of its initial publication or before the alleged infringement. OBS alleges that the Software "was first published at least as early as August 30, 2013" (FAC ¶ 12), and that Defendants' alleged infringement began in December 2021. (FAC ¶¶ 34-36.) Mr. Bailey did not register the copyright to the Software until May 2, 2023 (FAC ¶ 13), nearly ten years after initial publication and nearly eighteen months after the alleged infringement began. There is thus no basis to award statutory damages under the Copyright Act.

In an effort to avoid dismissal, OBS alleges in the FAC that sometime after registering the Software on May 2, 2023, Defendants developed and distributed an updated version of TikTok Live Studio that "contain[s] copies of the Software that were not present in previous iterations," thus constituting "new infringements" susceptible to statutory damages. (FAC ¶ 41.) This argument is without merit and runs afoul of the plain language of the statute authorizing statutory damages. Section 504 of the Copyright Act states that a copyright holder may elect "an award of statutory damages for ***all infringements involved in the action, with respect to any one work***, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1) (emphasis added). "[A]ll the parts of a compilation or a derivative work constitute one work." *Id.*

Here, there is only copyrighted work at issue—the Software, U.S. copyright registration number TX0009312907.  As the Ninth Circuit has explained, "[t]he number of awards available under this provision depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021); *see* 17 U.S.C. § 504(c)(1) (statutory damages may be awarded "for all infringements in the action, with respect to any one work.") "[E]ach *work* infringed may form the basis of only *one* award." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (emphasis added).  OBS's allegation of "new infringements" ignores the fact that the Software is a single work for purposes of statutory damages.  *See* 17 U.S.C. § 504(c)(1) ("[A]ll the parts of a compilation or derivative work constitute one work.").  Because Defendants purportedly infringed the Software beginning in December 2021, any subsequent alleged infringements cannot serve as the basis for statutory damages related to the same single work.  The Copyright Act thus forecloses OBS's demand for statutory relief, and it should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss OBS's FAC in its entirety with prejudice.

1
2  DATED:  August 15, 2025                    Respectfully submitted,
3
4                                             QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
5
6
7                                             By: /s/ *Michael E. Williams*
                                                 _____
8                                                 Michael E. Williams
                                                 *Attorney for Defendants*
9                                                 *Bytedance Ltd., et al.*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## __CERTIFICATE OF COMPLIANCE__

The undersigned, counsel of record for Defendants, certifies that this brief contains 6747 words, which complies with the word limit under Central District of California Local Rule 11-6.1.

DATED:  August 15, 2025

By: /s/ *Michael E. Williams*
    Michael E. Williams
    .