UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-00636-SSS-DTBx | Date | March 4, 2026 |
|---|---|---|---|
| Title | *Wizards of OBS, LLC v. Bytedance Ltd. et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**  **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. NO. 29]**

Before the Court is Defendants' Motion to Dismiss the First Amended Complaint filed on October 2, 2025.  [Dkt. No. 29].  The Motions are fully briefed and ripe for review.  [Dkt. No. 19, First Amended Complaint or "FAC"; Dkt. No. 29, "Motion"; Dkt. No. 30, Opposition or "Opp."; Dkt. No. 31, Reply or "Repl."].

Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.  [Dkt. No. 29].

## I.    BACKGROUND

Plaintiff OBS is a California-based software development studio that creates software for video recording, livestreaming, capture, and editing.  [FAC ¶¶ 4, 11].  On August 30, 2013, OBS published a livestreaming software called OBS Studio Software ("Software").  [*Id.* at ¶ 12].  OBS made the Software freely and publicly available for download pursuant to the terms of the GNU General Public License, version 2 ("GPL").  [*Id.* at ¶¶ 15–17].

The GPL is an open-source copyright license that provides licensees "legal permission to copy, distribute and/or modify the software" subject to specific terms and conditions. [*See Id.* ¶ 17; *see also* Declaration of Michael E. Williams filed concurrently with Defendants' Request for Judicial Notice, "Williams Decl.," Ex. 1 at Preamble].[1]  The GPL permits licensees to "copy and distribute" GPL-covered software, "provided that" they "accompany it with the complete corresponding machine-readable source code," or a written offer to provide the same. [Williams Decl., Ex. 1 ¶ 3].  The GPL also requires licensees to include a notice that the software is licensed under the GPL.  [*Id.* at ¶ 1].

Defendants comprise of multinational technology companies, ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., and TikTok Pte. Ltd., that develop software for mobile applications and desktop computers.  [FAC ¶¶ 5–9, 18–27].  One such software application is TikTok, which OBS describes as "a social media application that allows for the creation, sharing, and editing of audiovisual content."  [*Id.* ¶ 18].  On December 15, 2021, OBS discovered that TikTok Live Studio utilized "copies of the Software code base directly in the Infringing Software."  [*Id.* ¶ 35].  On December 16, 2021, OBS notified Defendants that TikTok Live Studio contained the Software's copyrighted code.  [*Id.* ¶ 36].

On March 10, 2025, Plaintiff OBS filed its Complaint against Defendants, asserting claims for copyright infringement and breach of contract.  [Dkt. No. 1].  On July 18, 2025, Defendants filed their motion to dismiss OBS's Complaint.  [Dkt. No. 17].  On August 1, 2025, OBS filed its FAC maintaining the two causes of action, copyright infringement and breach of contract.  [Dkt. No. 19].  On August 15, 2025, Defendants filed a motion to dismiss Plaintiff's FAC.  [Dkt. No. 23].  On September 30, 2025, the Court issued an Order denying Defendant's motion for Local Rule 7-3 noncompliance.  [Dkt. No. 28].  Defendants then filed this present Motion to Dismiss the FAC on October 2, 2025.  [Dkt. No. 29].

---

[1] The Court finds that the contents of the GPL were incorporated by reference in the FAC and **GRANTS** Defendants' Request for Judicial Notice. [Dkt. No. 29-1].  *Davis v. HSBC Bank Nev.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("Under the 'incorporation by reference' doctrine in this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.").

CIVIL MINUTES— GENERAL    Initials of Deputy Clerk <u>iva</u>

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).  To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor.  *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  A court need not accept, however, "a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile.  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## III.    DISCUSSION

### A.    Group Pleading under Rule 8

Defendants' first argument in its Motion is that Plaintiff's undifferentiated claims against multiple distinct corporate defendants do not satisfy Federal Rule of Civil Procedure 8(a)(2) ("Rule 8") because it fails to provide each Defendant with fair notice of its alleged misconduct.  [Motion at 5–7].  Plaintiff asserts that it has properly pleaded sufficient facts as to each individual Defendant-entity to satisfy Rule 8's pleading requirement.  [Opp. at 3–7].  As explained further below, the Court agrees with Plaintiff that it has pleaded sufficient facts as to each Defendant to satisfy Rule 8.

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not

CIVIL MINUTES—
GENERAL                    Initials of Deputy Clerk <u>iva</u>

contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Group pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 9763371, at *5 (N.D. Cal. Feb. 8, 2021) (citation modified). Courts in this circuit have permitted group pleading in cases involving corporate entities when there is a direct and overlapping connection between the parent company and its subsidiaries. *See, e.g.*, *Doe v. Github, Inc.*, 672 F. Supp. 3d 837, 855 (N.D. Cal. 2023). Courts have also found that frustration of notice of the claims to each defendant would be unlikely when they are represented by the same counsel and the plaintiff is unlikely to have knowledge as to the corporate structure of the entities at the motion to dismiss stage to know which ones took part in the alleged infringement. *Intuitive Imaging Informatics, LLC v. Intuitive Surgical Operations, Inc.*, No. 23-CV-10593-DSF-RAO, 2024 WL 4404992, at *3 (C.D. Cal. Sept. 4, 2024).

Ultimately, whether group pleading is proper hinges on whether the complaint gives Defendants fair notice of the claims against them. *Tivoli LLC v. Sankey*, No. SA14-CV-1285-DOC-JCGx, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015). Fair notice may be found when the plaintiff identifies what actions each defendant took that caused the plaintiff's harm without resorting to generalized allegations against the defendants as a whole. *See, e.g.*, *Github*, 672 F. Supp. 3d at 855.

Here, Plaintiff asserts that group pleading is permissible because the five individual Defendants are a "collection of coordinated entities under the same ownership and control." [Opp. at 3; *see also* FAC ¶¶ 18–21, 24, 26, 27]. Defendants argue that Plaintiff's factual allegations are inadequate to establish a sufficient showing of ownership and control for Rule 8 purposes. [Repl. at 1–3].

The Court first rejects Defendants' suggestion that Plaintiffs must allege facts that indicate an alter-ego or agency relationship at this juncture. [Repl. at 2–3]. The Court roots its analysis on pleading standards under Rule 8 as articulated by courts in this circuit, not on whether Plaintiff had sufficiently alleged facts to pierce the corporate veil or has established principal-agent liability. Although facts indicative of these theories would be helpful in the Rule 8 pleading analysis here, they are not necessary to meet the pleading standard, which is a different inquiry.

CIVIL MINUTES—
GENERAL           Initials of Deputy Clerk <u>iva</u>

Next, the Court is not persuaded by Defendants' attempts to distinguish
*Github* and *Intuitive Imaging Informatics*.

Although there was no copyright claim in *Github*, the plaintiffs there were
alleging that the defendants were similarly "violat[ing] provision of [the] open-
source licenses" under which the plaintiffs published their code because defendants
reproduced the plaintiffs' code without any attribution, copyright notices, or
license terms.  672 F. Supp. 3d at 850.  The court there also expressly found that
the plaintiffs sufficiently pleaded claims against all corporate entities-defendants
under Rule 8, reasoning that the entities collectively "programmed, trained, and
maintained [the infringing software]" and that the entities had parent-subsidiary
relationships in which the parent managed the operations of its subsidiaries to the
extent that the parent was aware of the alleged unlawful conduct.  *Id.* at 855.

Here, Plaintiff alleges that Defendants work collaboratively with one another
and developed TikTok Live Studio in concert, [FAC ¶¶ 28, 34], that Defendants
used each entity's employees interchangeably, [FAC ¶¶ 26–27], and that
employees of both TikTok and Bytedance used email addresses affiliated with
TikTok and ByteDance to admit to including OBS copyrighted worked in the
TikTok Live software, [FAC ¶¶ 35–37].  Plaintiff further alleges that Defendants
are a collection of coordinated entities under the same ownership and control that
worked in concert globally.  [FAC ¶¶ 18–21, 24, 26, 27].  These allegations that
point to a collective effort by Defendants to program and operate the allegedly
infringing software, signaling that the different entities were aware of the alleged
misconduct, are akin to the allegations in *Github* that the court there found
sufficient under Rule 8.

Likewise, the *Intuitive Imagine Informatics* court also expressly discusses
group pleading under Rule 8.  2024 WL 4404492, at *3 (adopting the "relaxed"
group pleading standard involving parent-subsidiary entities where frustration of
notice would be unlikely even where the defendants are "lumped together").  The
court there emphasized that defendants would likely be sufficiently put on notice
of the nature of the claims being asserted against them because of their parent-
subsidiary relationship and because they shared the same counsel in the litigation.
*Id.* at *3.

Allegations of ownership interest and the degree of control that interest
affords were also deemed adequate for group pleading.  *See Github*, 672 F. Supp.
3d at 855 ("Microsoft is alleged to maintain an ownership interest in GitHub and
OpenAI, L.P., which allegedly co-created Copilot . . . . Such allegations provide

CIVIL MINUTES—
GENERAL   Initials of Deputy Clerk iva

sufficient notice of the basis of Plaintiffs' DMCA claims against each Defendant. The complaint is not deficient under Rule 8(a).").

Here, Plaintiff alleges that Defendant ByteDance Ltd. "controls the majority of the shares or other ownership interest(s) in Defendants ByteDance Inc., TikTok Ltd., TikTok Inc., and TikTok Pte. Ltd." [FAC ¶ 23]. And again, Plaintiff alleges that Defendants are a collection of coordinated entities under the same ownership and control that worked in concert globally. [FAC ¶¶ 18–21, 24, 26, 27]. Specifically, Plaintiff points to ByteDance Ltd.'s 100% equity interests in each individual entity, as well as public claims that TikTok is a flagship product of Bytedance Ltd. and that all individual defendants use the TikTok logo as agents for ByteDance Ltd. [FAC ¶¶ 19, 25, 27]. Defendants, who are all represented by same counsel, are alleged to have worked in concert, swapping each other's employees, interchangeably using TikTok and ByteDance emails to admit to copying the Software code, and coordinating under the same ownership and control as parent-subsidiaries. It is thus unlikely that fair notice of the claims against Defendants would be frustrated. *See Intuitive Imagine Informatics*, 2024 WL 4404492, at *3.

If Defendants genuinely believe only one of the ByteDance-owned-entities engaged in the alleged wrongdoing, that is an issue which counsel may "assiduously explore through discovery devices." *See Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035 (S.D. Cal. 2023) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005)); *see also Intuitive Imaging Informatics*, 2024 WL 4404992, at *3 ("[Plaintiff] is unlikely to have knowledge as to the corporate structure of these entities at [the pleading stage] to know exactly which entities took part in the alleged trademark infringement . . . where the defendants are alleged to be 'related entities' who acted in concert 'it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant.'") .

Lastly, the Court is in receipt of Defendants' Notice of Supplemental Authority, [Dkt. No. 33], and has reviewed *Gibson v. City of Portland*, 165 F.4th 1265 (9th. Cir. 2026). The Court's ruling here is in accord with the Rule 8 principles set forth in *Gibson*.

The pleading held to be in violation of Rule 8 in *Gibson* is materially different from the allegations presented here. In *Gibson*, the Ninth Circuit held that the complaint violated Rule 8 because it employed impermissible "shotgun pleading." *Id.* at 1295. There, the plaintiffs set forth hundreds of factual

allegations but, in their causes of action, referred only to "defendants" collectively
while asserting multiple constitutional violations against numerous defendants. *Id.*
at 1291–95. The complaint incorporated earlier allegations wholesale into each
claim and failed to identify which defendant committed which specific acts or
which actions corresponded to particular constitutional violations. *Id.* As a result,
the pleading did not provide the defendants with fair notice of the claims against
them and forced both the defendants and the court to decipher the alleged factual
basis for liability. *See id.* at 1290, 1291–95.

The allegations here are of a different character. Plaintiff does not simply
lump together unrelated defendants without explanation. Instead, Plaintiff alleges
that Defendants are affiliated corporate entities operating under common
ownership and control and that they acted collaboratively in developing and
operating the allegedly infringing software. [FAC ¶¶ 18–21, 24, 26, 27]. The FAC
alleges, among other things, that the parent entity holds controlling ownership
interests in the subsidiary entities, that the entities used employees
interchangeably, that personnel across the entities communicated using TikTok and
ByteDance email accounts regarding the software, and that the defendants
collectively participated in developing and deploying the product at issue. [*Id.* ¶¶
18–21, 24, 26–28, 34-37]. In other words, Plaintiff's use of collective references
to "Defendants" is tied to the theory that the defendants functioned as a
coordinated enterprise in creating and distributing the software.

Unlike the pleading in *Gibson*, these allegations do not obscure the conduct
underlying the claims or leave defendants guessing about the nature of the alleged
wrongdoing. Instead, the complaint identifies a specific course of conduct—the
development and operation of the allegedly infringing software—and alleges that
each defendant participated in that conduct as part of a coordinated corporate
structure. Where a complaint plausibly alleges that related corporate entities acted
together in carrying out the challenged activity, as discussed, some degree of group
pleading may be appropriate because the alleged misconduct is itself collective.
As such, concerns of lack of fair notice and the inability to determine which
defendant engaged in which conduct are not present here.

The Ninth Circuit in *Gibson* clarified that "Rule 8 provides district courts
with an additional *tool* that they *may* use to dismiss shotgun pleadings when
identified—not a rule necessarily requiring district courts to do so, however
prudent it may be." *Id.* at 1290. The *Gibson* court clarified that Rule 8 "supplies a
standard, not a rule," and that shotgun pleading "describes a class of defects in

---

CIVIL MINUTES—
                                              GENERAL               Initials of Deputy Clerk <u>iva</u>

complaints" but "does not supply a brightline rule." *Id.* at 1289–90. Rule 8 will still "require judgment on the part of the district courts to determine those complaints that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis." *Id.* at 1290.

The Court thus finds that Plaintiff has satisfied Rule 8. As such, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims for improper group pleading.

### B.  Preemption of the Breach of Contract Claim

Federal copyright preemption of overlapping state law claims under the Copyright Act, 17 U.S.C. § 301, is "explicit and broad" and "prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 904 (9th Cir. 1992). Section 301 establishes a two-part test for preemption: (1) the claims must come within the subject matter of the copyright, and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as set forth in the Act. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). To avoid preemption under the second prong, the state law claim "must protect rights which are qualitatively different from the copyright rights." *Design Art v. Nat'l Football League Properties, Inc.*, No. 00CV593 JM (JAH), 2000 WL 33151646, at *2 (S.D. Cal. Aug. 18, 2000) (citing *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Thus, courts ask whether the state law claim has an "extra element" that changes the nature of the claim. *Del Madera*, 820 F.2d at 977.

Here, the parties agree that the first prong is met—Plaintiff's breach of contract claim is based on Defendants' use of Plaintiff's copyrighted software. [MTD at 13; Opp. at 14]. However, the parties disagree on whether the rights protected in the breach-of-contract claim is qualitatively different in that in contains an "extra element" from the rights protected by the Copyright Act. The Court finds that they are protecting the same right, so the state breach-of-contract claim is preempted. The following two rights are at issue:

- Copyright Act: Grants copyright owners the "exclusive rights to *display, perform, reproduce, or distribute* copies of a copyrighted work, to *authorize others to do those things*, and to *prepare derivative works* based upon the

---

CIVIL MINUTES—
GENERAL                Initials of Deputy Clerk <u>iva</u>

copyrighted work." *Laws v. Sony Music Ent. ,Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (quoting the Copyright Act, 16 U.S.C. § 106).

- GPL: "Under the terms of the GNU General Public License, version 2, users may *review, use, modify and republish* the source code of the subject software *so long the users comply with certain requirements* including but not limited to the user's use, modification or republication of the software also remains open source for users to view and use, certain notices and disclaimers are given and parties are given or offered a copy of the full source code of the entire user software that must be provided." [FAC ¶ 17; *see also* Williams Decl., Ex. 1].

On the surface, the breach-of-contract claim appears to be asserting different rights because it's alleging that Defendants violated the open-source license—not because Defendants merely "copied, modified, and distributed" the code—but because of Defendants' noncompliance with the *additional* requirements *after* they copied, modified, made derivative works, and distributed. According to Plaintiffs, these additional requirements are the "extra elements" that makes the rights from the breach-of-contract claim "qualitatively different" from the rights that the Copyright Act protects.

This argument is complicated by the open-source nature of the Software. Plaintiff is attempting to distinguish the breach-of-contract claim because the GPL has additional requirements that are not elements of the Copyright Act. However, the code that Plaintiff has copyrighted is open source. The purpose of open-source code is that *anyone* is free to use, modify, and republish the source code, as stated by Plaintiff. [FAC ¶ 17 ("Under the terms of the GNU General Public License, version 2, users may review, use, modify and republish the source code of the subject software so long the users comply with certain requirements . . . .")]. *See also Versata Software, Inc. v. Ameriprise Financial, Inc.*, No. A-14-CA-12-SS, 2014 WL 950065, at *1 (W.D. Tex. Mar. 11, 2014) ("'Open source' software is software whose code is made freely available to all users, allowing the public to access and modify the code on the theory a crowd-sourced product will be superior to a privately developed one. In keeping with this open source ethos, the GPL allows for free use and redistribution of [the software code], including in other software (i.e., the creation of a derivative work), on the condition the original licensor continues the open source trend and makes the source code freely available.").

| CIVIL MINUTES—GENERAL | Initials of Deputy Clerk <u>iva</u>

Despite this, Plaintiff alleges in its Copyright Act claim that Defendants "*copied, reproduced, displayed, modified, made derivatives of and distributed* the Software including *without limitation* in the Infringing Software", [FAC ¶ 45], and that Defendants "infringed Plaintiff's copyrights by *copying and creating infringing derivative works* from the Software and *publishing* same or versions substantially similar to the public, infringing on Plaintiff's rights in the copyright," [FAC ¶ 51].   These Copyright allegations, like those of copying, reproducing, displaying, modifying, making derivatives of, distributing, and publishing, are all conduct that the GPL license permits by virtue of the nature of open-source code. The key language here is that Plaintiff is alleging that Defendants did so "without limitation." [*Id.* ¶ 45].  *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008), and *MDY Indus. v. Blizzard Ent.*, 629 F.3d 928 (9th Cir. 2010), are instructive here in elucidating what rights Plaintiff is seeking to protect here in its Copyright Act Claim that are not already permitted by the GPL.

The *Jacobsen* court held that a copyright owner, like Plaintiff here, who grants a nonexclusive license to use its copyrighted material, like an open-source license, waives its right to sue the licensee for copyright infringement and can sue only for breach of contract. *Jacobsen*, 629 F.3d at 1380.  However, if the licensee acts "out of scope" of the license, the licensee can be sued for copyright infringement.  *MDY Indus.*, 629 F.3d at 939.  Terms that limit a license's scope, like the additional requirements of the GPL, are "conditions" that gives rise to copyright infringement if breached.[2]  *Id.*  The GPL here has language in the header and in the body indicating that these additional requirements are conditions that establish the scope of a licensee's *authorized* copying, modifying, and distributing. [*See* Williams Decl., Ex. 1].  It follows that noncompliance with these conditions is not unique to the breach of contract claim.  Unauthorized conduct that goes beyond

---

[2] Plaintiff offers no argument on whether the GPL requirements are "conditions" or "covenants," so the Court finds that Plaintiff has conceded on this point.  Even if Plaintiff had not waived this argument, the Court finds these requirements are conditions, the noncompliance of which gives rise to a copyright claim—the GPL is limiting the scope of authorized use by including conditional language like "provided that" and naming its header "Terms and Conditions for Copying, Distribution, and Modification."  [*See* Williams Decl., Ex. 1].  *See, e.g.*, *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D. Cal. 2002) (terms associated with conditions precedent include "'if,' 'on condition that' or 'provided'").

CIVIL MINUTES—
GENERAL    Initials of Deputy Clerk iva

the scope of the license, the boundaries of which are defined by the conditions in the GPL terms, is the same unauthorized conduct that gives rise to copyright infringement and from which the Copyright Act protects licensors.

As such, because the breach-of-contract claim for noncompliance to the GPL asserts rights that are also protected by the Copyright Act and is otherwise not "qualitatively different" or includes an "extra element," the breach-of-contract claim is preempted.[3]  The Court thus **GRANTS** Defendants' Motion to Dismiss as to its preemption argument, and the breach-of-contract is **dismissed**.

## C.    Statutory Damages under the Copyright Act

Defendants seek to dismiss Plaintiff's prayer for statutory damages and attorneys' fees under the Copyright Act because the Software was not registered within three months of its initial publication or before the alleged infringement. [MTD at 19–20].  Plaintiff argues that it is still entitled to statutory relief for additional infringement post-registration if such infringements are "separate and distinct" from the original conduct.  [Opp. at 19].  The Court agrees with Defendants.

Under 17 U.S.C. § 504(a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages and any additional profits.  Section 412(2) mandates that, in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work.  *See id.* (precluding an award of attorneys' fees as well); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 707 n.5 (9th Cir. 2004).

In the Ninth Circuit, "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412."  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008) ("To allow statutory damages and attorneys' fees where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412.").  Consequently, if infringing conduct commences prior to the work's copyright registration date, to properly

---

[3] The Court does not discuss whether there was an enforceable browsewrap agreement because the dismissal of the breach-of-contract claim renders the issue moot.

CIVIL MINUTES—
                                                GENERAL                    Initials of Deputy Clerk <u>iva</u>

seek statutory damages and attorneys' fees for any infringing conduct after the work's registration, the conduct must be "separate and distinct" from the conduct that occurred prior to registration. *See id.* at 701. "The key to determining whether an infringement is separate and distinct is whether continuing infringements are of the same copyrighted material and by the same defendant." *Goatpix LLC v. Upper Deck Co.*, No. 21-CV-1815-TWR-JLB, 2022 WL 2820738, at *6 (S.D. Cal. July 19, 2022) (citing *Por Los Rios, Inc. v. Lions Gate Ent., Inc.*, No. 2:13-CV-7640-CBM-PLA, 2014 WL 12605374, at *5 (C.D. Cal. May 21, 2014)) (citation modified).

Here, it is undisputed that Plaintiff's Software was not registered prior to Defendants' first alleged infringement of the Software and was not registered within three months after first publication of the Software. *See* 17 U.S.C. § 412(2). Plaintiff does not contest that its correspondence with Defendants in December 2021 alludes to potential infringement occurring prior to the Software's copyright registration date of May 2, 2023. [FAC ¶ 34–36]. The initial publication of the software was on August 30, 2013, at the earliest. [*Id.* ¶ 12]. The registration of the Software was thus made more than three months after the first publication of the work. *See Derek Andrew*, 528 F.3d at 699. To the extent that the Court considers all post-registration infringements to be merely a continuation of the infringement that commenced before registration for § 412 purposes, the Court finds that statutory damages and attorneys' fees are barred under § 412. *See id.* ("[T]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412.").

In the alternative, to properly seek attorneys' fees and statutory damages, Plaintiff must adequately allege that the post-registration infringement was separate and distinct from the infringement that occurred prior to its registration.[4]

---

[4] Plaintiff contends that the Court cannot appropriately determine whether the post-registration iterations of Defendants' product are considered "separate and distinct" or a continuation in the series because it is a question of fact that cannot be determined at the motion to dismiss stage. However, the Ninth Circuit in
(continued . . . )

CIVIL MINUTES—GENERAL              Initials of Deputy Clerk iva

*See id.* at 701.  However, the Court finds that Plaintiff has not adequately alleged
that the post-registration infringement was separate and distinct from the pre-
registration infringement.  Plaintiff pleads that the "additional iterations of the
Infringing Software developed after [registration] contain copies of the Software
that were not present in previous iterations and [are] therefore new infringements.
[FAC ¶ 41].  However, this statement alone only amounts to a conclusory
allegation of separate and distinct infringement.  Even without the benefit of
discovery, Plaintiff must provide at least some facts as to these additional iterations
to sufficiently state a claim to relief that is plausible on its face.

Additionally, even if Defendants had copied portions of the Software that
were not present in previous iterations, all portions belong to the same work.  *See*
17 U.S.C. § 504(c)(1) ("[A]ll the parts of a compilation of derivative work
constitute one work"); *Columbia Pictures Television, Inc. v. Krypton Broad. of
Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) ("[E]ach work infringed
may form the basis of one reward.").  It appears that the pre- and post-registration
conduct here involved both the same work and the same defendant(s).  *See
Goatpix*, 2022 WL 2920738, at *6; *Por Los Rios*, 2014 WL 12605374, at *5.
There are no facts here that would allow the Court to plausibly find that the post-
registration infringement was separate and distinct from the pre-registration
conduct, especially given that all the infringements, regardless of when it
happened, involved the same work and the same defendants.

"By denying an award of statutory damages and attorneys' fees where
infringement takes place before registration, Congress sought to provide copyright
owners with an incentive to register their copyrights promptly."  *Derek Andrew*,
528 F.3d at 700.  To allow statutory damages and attorneys' fees where an
infringing act occurs before registration and reoccurs thereafter would defeat the
incentives placed by Congress.  *Id.*  As such, for the foregoing reasons detailed

---

*Whittlestone v. Handi-Craft* found that Rule 12(b)(6) is the proper vehicle to strike
a request for damages at the pleading stage, 618 F.3d 970, 974 (9th Cir. 2010), and,
in 2007, the Supreme Court in *Bell Atlantic Corp. v. Twombly* rejected the "no set
of facts" or "notice pleading" standards under Rule 12(b)(6) in favor of the now
applicable "plausibility" pleading standard.  *See* 550 U.S. 544, 564 (2007).  When
read together, these cases suggest that it is appropriate to dismiss implausible
claims for damages at the pleading stage.  *See e.g., Goatpix*, 2022 WL 2920738, at
*4–5.

CIVIL MINUTES—
                     GENERAL                  Initials of Deputy Clerk <u>iva</u>

above, the Court **GRANTS** Defendants' Motion as to Plaintiff's request for
statutory damages and attorneys' fees.

## IV.    CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART**
Defendant's Motion as follows:

- The Court **DENIES** Defendants' Motion to Dismiss all of Plaintiff's claims
  for improper group pleading.

- The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's breach-of-
  contract claim as to its preemption argument.  The breach-of-contract claim
  is **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO
  AMEND**, as the Court finds that amendment would be futile.

- The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's demand for
  statutory relief under the Copyright Act.  The Court **STRIKES** all portions
  in Plaintiff's First Amended Complaint that requests statutory damages and
  attorneys' fees under the Copyright Act.

  **IT IS SO ORDERED.**

CIVIL MINUTES—
                              GENERAL                  Initials of Deputy Clerk <u>iva</u>